UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD JAMES REDMOND,

      Plaintiff,    Civil Action No. 16-12617
              Honorable Victoria A. Roberts
              Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 18]**

  Plaintiff Edward James Redmond ("Redmond") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [16, 18], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.  RECOMMENDATION**

  For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Redmond is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [18] be DENIED, Redmond's Motion for Summary Judgment [16] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

## II. REPORT

### A. Procedural History

On June 27, 2013, Redmond filed an application for DIB, alleging a disability onset date of August 25, 2009. (Tr. 116-23). This application was denied initially on November 8, 2013. (Tr. 73-76). Redmond filed a timely request for an administrative hearing, which was held on February 3, 2015, before ALJ Jerome Blum. (Tr. 26-57). Redmond, who was represented by attorney John Walt, testified at the hearing, as did vocational expert James Fuller. (*Id.*). On March 13, 2015, the ALJ issued a written decision finding that Redmond is not disabled under the Act. (Tr. 12-21). On May 11, 2016, the Appeals Council denied review. (Tr. 1-5). Redmond timely filed for judicial review of the final decision on July 13, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

*1.     Redmond's Reports and Testimony*

At the time of the administrative hearing, Redmond was 42 years old, and at 5'10" tall, weighed 165 pounds. (Tr. 132, 136). He was living in a house with his mother. (Tr. 42, 160). He dropped out of high school but subsequently earned his GED. (Tr. 137, 187). Previously, he worked as an automotive assembler from January 1997 to August 2009. (Tr. 29, 136-37).

Redmond alleges disability primarily as a result of ulcerative colitis, bipolar disorder, depression, anxiety, back pain, and mitral valve prolapse. (Tr. 136, 160). He testified that he was first diagnosed with ulcerative colitis in 2001, and he was able to work with this condition until 2009. (Tr. 32). In April 2009, however, Redmond had a "breakdown"; he attempted suicide by overdosing on medication in his car in the parking lot at work, but he passed out with his foot on the gas pedal, his car caught fire, and he was rescued by police.[1] (Tr. 29-30, 201).

---

[1] Redmond had a history of prior suicide attempts. (Tr. 33-34).

Redmond was off work for a few months while he received psychiatric treatment, but when he subsequently returned to work, he was "let go" because his employer apparently refused to continue to accommodate his frequent need to use the restroom. (Tr. 29-31, 136-37).

Redmond was without health insurance from approximately 2009 to 2012; once he obtained health insurance, he began seeking more regular physical and mental health treatment. (Tr. 36-37). He underwent mitral valve replacement surgery in 2014, but continued to experience chest pain "off and on." (Tr. 38-39). At the time of the hearing, he was taking numerous medications for his ulcerative colitis, heart condition, back pain, and mental impairments. (Tr. 38-39, 42, 49-50). He testified that these medications help calm him down somewhat, but cause side effects, including significant drowsiness. (Tr. 39, 43). Redmond also testified that, because of his depression and anxiety, he feels "empty inside," has no interest in anything, and has no motivation, saying that, at times, he feels "like a ghost walking this earth." (Tr. 41, 46). Redmond alleges that, because of his physical impairments, he can lift only 2-5 pounds, stand for only 20-30 minutes, walk only one block, and sit for only 15-20 minutes at a time. (Tr. 46-47).

With his mother's help, Redmond is able to perform some household tasks, including cooking, laundry, and grocery shopping. (Tr. 161, 163). He has difficulty sleeping due to both his bathroom needs and his anxiety. (*Id.*). His mother has to remind him to take his medications. (Tr. 46, 162). He does not go outside very often because he gets "overwhelmed" and would rather be alone. (Tr. 163, 165). He has a driver's license but has not driven "in a while." (Tr. 52, 163). He cannot pay bills or handle a savings or checking account because he has "trouble staying focused." (Tr. 163). His hobbies previously included playing guitar, reading, and watching television or movies, but he has lost interest in these activities. (Tr. 164).

4

*2.     Medical Evidence*

The Court has thoroughly reviewed Redmond's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

*3.     Vocational Expert's Testimony*

James Fuller testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 54-57). The ALJ asked the VE to imagine a claimant of Redmond's age, education, and work experience who can perform sedentary work, with a sit/stand option. (Tr. 55). The VE testified that the hypothetical individual would be capable of working in "some" inspector jobs (1,500 in the state of Michigan and 27,000 nationally). (Tr. 55-56). The ALJ then asked whether the hypothetical individual's need to use the bathroom "fairly frequently at times" would impact his ability to perform these jobs; the VE responded by saying that if the hypothetical individual was "off task for any reason including the bathroom breaks more than 10 percent of the day," all unskilled work would be precluded. (Tr. 56).

**D.     The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Redmond is not disabled under the Act. At Step One, the ALJ found that Redmond did not engage in substantial gainful activity between August 25, 2009 (the alleged onset date) and December 31, 2014 (his date last insured). (Tr. 14). At Step Two, the ALJ found that Redmond has the severe impairments of bipolar disorder and mitral valve prolapse. (*Id.*). At Step Three, the ALJ found that Redmond's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed Redmond's residual functional capacity ("RFC"), concluding that

he is capable of performing unskilled sedentary work with a sit/stand option. (Tr. 17).

At Step Four, the ALJ determined that Redmond is unable to perform any of his past relevant work. (Tr. 19). At Step Five, the ALJ concluded, based in part on the VE's testimony, that he is capable of performing a significant number of jobs that exist in the national economy. (Tr. 20). As a result, the ALJ concluded that Redmond is not disabled under the Act. (*Id.*).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

In his motion for summary judgment, Redmond primarily argues that the ALJ's physical RFC finding is not supported by substantial evidence because it fails to account for both his ulcerative colitis and his mitral valve issues.² (Doc. #16 at 15-17). For the reasons set forth

---

² Redmond also argues that remand is appropriate because (1) the ALJ's mental RFC assessment fails to adequately account for his moderate limitations in concentration, persistence, or pace; and (2) the ALJ's Step Five finding that Redmond can perform a significant number of jobs in the national economy is not supported by substantial evidence. (Doc. #16 at 17-20). Because the Court is recommending remand on other grounds, it need not address the merits of these

below, the Court agrees and finds that remand is warranted.

        *1.*      *The ALJ Erred in Failing to Consider Redmond's Ulcerative Colitis*

Redmond argues that the ALJ erred in failing to find, at Step Two of the sequential evaluation analysis, that his ulcerative colitis is a severe impairment. (Doc. #16 at 16-17). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.* The Sixth Circuit has "characterized step two of the disability determination process as a *de minimis* hurdle." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007) (internal quotations omitted). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Having reviewed the relevant evidence, discussed in greater detail *infra* at 9-10, the Court finds that the ALJ erred in failing to address Redmond's ulcerative colitis and any limitations this condition may impose.

As Redmond points out, the ALJ "failed to so much as mention" his ulcerative colitis in

---

arguments. On remand, however, the ALJ should ensure that these issues are fully considered. In particular, the ALJ should discuss the side effects of the numerous medications Redmond was taking to address his mental health needs, including Effexor, Klonopin, Celexa, and Seroquel, all of which Redmond testified made him sleepy and tired. (Tr. 42-43).

the decision (Doc. #16 at 16), despite Redmond's testimony and written statements detailing the impact of this impairment, as well as the numerous medical records pertaining to this condition. For example, in an August 2013 Function Report, Redmond indicated that his ulcerative colitis causes "an uncontrolled use of the bathroom"; that he has difficulty sleeping due to his bathroom needs; and that he has days where he "live[s] on [the] toilet." (Tr. 160, 161). At the February 2015 hearing, Redmond testified that, on bad days – which occur four or five times per week – he "could be in the bathroom one or two times within an hour five hours straight." (Tr. 52).

As for the relevant medical records, the Court notes that on August 4, 2009, Redmond reported an exacerbation of his ulcerative colitis and was prescribed a "GI cocktail," prednisone, and Prilosec. (Tr. 262). At a follow-up visit two weeks later, he was still experiencing a flare-up of his ulcerative colitis and was prescribed additional medication and ordered to get an upper endoscopy and colonoscopy "ASAP." (Tr. 261). At a subsequent doctor's visit, in May 2010, it was noted that Redmond's ulcerative colitis continued to flare up on and off. (Tr. 257). At his consultative examination, on October 29, 2013, Redmond reported that he was diagnosed with ulcerative colitis in 2001; was put on Asacol, which helped his condition; had not been taking Asacol "for many years"; and had had a flare-up just two months earlier. (Tr. 389). In February 2014, Redmond's treating physician, Dr. Goldman, characterized his ulcerative colitis as "tolerable," but nevertheless noted hyperactive bowel sounds and slight discomfort over the entire abdomen on physical examination, offered to refer him to a GI specialist, and ordered another colonoscopy. (Tr. 478). At his next visit to Dr. Goldman, in April 2014, Redmond indicated that he was "working on getting a colonoscopy and seeing the gastroenterologist for his colitis." (Tr. 476). In June 2014, Redmond reported that he was scheduled for a colonoscopy the following week, after which he would see the "GI Doctor." (Tr. 474). In October 2014,

Redmond continued to report right upper quadrant pain, which Dr. Goldman noted was complicated by his bowel issues. (Tr. 469). On examination, Redmond's bowel sounds were very active, and Dr. Goldman appeared to be considering ordering an abdominal ultrasound. (*Id.*).

The Commissioner concedes that the ALJ did not address Redmond's ulcerative colitis in his decision. She asserts, however, that "[w]hile a written explanation would have been preferable, remand is not warranted because the record does not support a more-restrictive RFC." (Doc. #18 at 22). In support of her argument, the Commissioner points to some medical evidence suggesting that Redmond's ulcerative colitis was not disabling (for example, evidence that Redmond did not receive significant treatment for this condition between 2009 and 2012 (notably, while he was uninsured), and the fact that Dr. Goldman did not identify this condition when completing a physical RFC questionnaire in January 2015). (*Id.* at 24 (citing Tr. 247-60, 482-88)). The problem, however, is that the Commissioner is asking this Court to find – in the complete absence of any analysis by the ALJ – that the record as a whole does not support a finding that Redmond's ulcerative colitis was severe and/or that the RFC should have contained limitations to account for this condition.

Fundamentally, it is the responsibility of the ALJ, not the Court, to evaluate the relevant evidence in the first instance, and the fact that the Commissioner now offers *post hoc* justifications for the ALJ's conclusion is simply insufficient. *See Weeks v. Comm'r of Soc. Sec.*, 2016 WL 6067957, at *4 (W.D. Mich. Oct. 17, 2016) ("An ALJ 'must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.' The Court cannot do so here. The Commissioner's attempt to rehabilitate the ALJ's reasoning on this point is precisely the type of analysis the ALJ should have undertaken in the

first place.") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)) (internal citation omitted); *Duehring v. Comm'r of Soc. Sec.*, 2016 WL 865844, at *5 (E.D. Mich. Mar. 7, 2016) ("The Court declines to rewrite the ALJ's opinion so as to make it comport with the evidence presented to the ALJ."). For these reasons, the Court finds that remand is warranted for proper evaluation of Redmond's ulcerative colitis.[3]

> 2. *The ALJ Also Erred in Failing to Account for Redmond's Mitral Valve Issues in Formulating his RFC*

Redmond also argues that the ALJ erred in failing to account for his mitral valve issues in formulating his RFC. (Doc. #16 at 15-16). Specifically, Redmond asserts that after the ALJ found his "mitral valve prolapse"[4] to be a severe impairment at Step Two, he "never mentioned this condition again and, more importantly, never indicated how it would limit [his] ability to do basic work activities." (*Id.* at 15).

As an initial matter, the Commissioner correctly points out that this assertion is not *entirely* accurate; the ALJ did include one sentence in his discussion of Redmond's RFC, which states: "[A]side from the diagnostic findings of cardiomegaly and a mitral valve prolapse, there are no diagnostic findings to support the claimant's allegations." (Tr. 18). However, there can be no dispute that the ALJ failed to discuss records related to Redmond's mitral valve replacement surgery, ongoing treatment, and related functional impairments.

It appears that Redmond's heart problems began when he presented to the emergency room in July 2012, after a heart murmur was discovered at a routine doctor's visit that same day. (Tr. 283-84). He underwent testing and was sent home on medication, advised to obtain an

---

[3] This is particularly true where the VE testified that, if a hypothetical individual was "off task for any reason including [] bathroom breaks more than 10 percent of the day," all unskilled work would be eliminated. (Tr. 56).

[4] As Redmond points out, this impairment was actually more than a merely a mitral valve "prolapse," as he required mitral valve replacement surgery. (Doc. #16 at 15; Tr. 406-10).

11

outpatient echocardiogram, and directed to follow up with a cardiologist. (*Id.*). In May 2013, Redmond returned to the emergency room with complaints of seizure-like activity; although those tests came back normal, it was discovered by chance that he had mitral valve regurgitation, and he was advised to follow up with cardiology. (Tr. 317).

On April 11, 2014, Redmond presented to Brian Litch, D.O., a cardiologist at the Macomb Cardiovascular Institute, reporting chest pain. (Tr. 397-98). Dr. Litch diagnosed Redmond with a cardiac murmur and atypical chest pain and recommended an echocardiogram (to assess for valvular heart disease) and a stress echocardiogram (to assess for ischemia). (Tr. 397). On April 25, 2014, Redmond saw Dr. Litch again, at which time he was informed that his echocardiogram showed "severe mitral valve prolapse with associated severe mitral insufficiency, predominantly of the posterior leaflet." (Tr. 399). He underwent a cardiac catheterization on May 5, 2014, which showed 4+ mitral insufficiency, and was referred to a cardiothoracic surgeon in anticipation of mitral valve repair or replacement. (Tr. 399, 405-06). From July 30, 2014, to August 4, 2014, Redmond was hospitalized after undergoing complex mitral valve repair surgery. (Tr. 406-10). And, in the physical RFC assessment she completed in January 2015, Redmond's primary care physician, Dr. Goldman, indicated that he continued to report some chest pain (pain that Redmond testified he continued to experience "off and on" at the time of the administrative hearing). (Tr. 38-39, 482-88).

In her motion for summary judgment, the Commissioner concedes that "the ALJ did not summarize Plaintiff's mitral valve surgery and follow-up treatment in the decision itself" but claims he "thoroughly explored the subject at the hearing, which shows that he considered it." (Doc. #18 at 20). The Commissioner also points to some medical evidence that she asserts belies Redmond's allegations of ongoing mitral valve issues. (*Id.* at 21). Again, however, the

12

Commissioner asks this Court to excuse the ALJ's failure to discuss or evaluate any of the relevant this medical evidence and, instead, either (a) assume that the ALJ considered this evidence, and/or (b) conclude – based on its own review of the evidence – that no additional limitations need be included in Redmond's RFC. The Court finds each of these alternatives equally problematic.

The Court is cognizant, as the Commissioner points out, that an ALJ is not obliged to discuss every piece of evidence in the record. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). In this case, though, that general principle of law does not carry the day. Here, the ALJ found Redmond's mitral valve issues to be severe, meaning that he apparently believed this impairment significantly limited Redmond's "ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). At the same time, however, the ALJ failed entirely to explain *how* this severe impairment limited Redmond's functioning. Thus, where the ALJ failed to even mention that Redmond underwent mitral valve replacement surgery, and failed to provide even a minimal discussion of the evidence related to this condition, the Court cannot simply assume that the ALJ considered the evidence pertaining to Redmond's mitral valve issues and concluded that they did not further limit his physical RFC. *See Samona v. Comm'r of Soc. Sec.*, 2016 WL 3951420, at *7 (E.D. Mich. June 24, 2016) (despite the fact that substantial evidence might support the ALJ's analysis, remand is warranted because of his failure to "articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning") (internal quotations omitted).

In summary, the Court cannot conclude that the errors discussed above – including with respect to the ALJ's evaluation of Redmond's ulcerative colitis and mitral valve impairment[5] – were harmless. Although Redmond's impairments might ultimately be deemed non-disabling, that determination can only be made after an appropriate analysis of the evidence pertaining to all of his medical conditions. Thus, the ALJ's RFC finding is not supported by substantial evidence, and remand is warranted.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [18] be DENIED, Redmond's Motion for Summary Judgment [16] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that this case be remanded to the ALJ for further proceedings consistent with this Recommendation.

Dated: April 27, 2017  　　　　　　　　　　　　s/David R. Grand  
Ann Arbor, Michigan  　　　　　　　　　　　　DAVID R. GRAND  
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[5] The ALJ also did not find Redmond's carpal tunnel syndrome ("CTS") to be a severe impairment. (Tr. 15). In reaching this conclusion, the ALJ said only: "[T]he claimant's reported carpal tunnel syndrome is not supported by the medical evidence of record." (*Id.*). This too is incorrect, as the record does contain evidence of this condition. (Tr. 264 (positive Tinel's and Phalen's signs and bilateral injections administered for CTS in June 2009), 255 (CTS noted in December 2010; Vicodin prescribed and splint recommended), 253 (positive Tinel's and Phalen's signs and injection administered for CTS in January 2011), 246 (history of CTS noted in December 2011), 247 (same in June 2012), 485 (Redmond limited in handling as a result of CTS)). Thus, on remand the ALJ should specifically address Redmond's CTS, and the impact it has, if any, on the RFC ultimately concluded.

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 27, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager